UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| GREGORY MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 09-CV-3221 |
| | ) | |
| LARRY PHILLIPS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

On June 28, 2011, Judge Harold A. Baker granted summary judgment on all claims except for Plaintiff's First Amendment retaliation claim against Defendants Phillips, Kulhan, McCalla, and McAdory. Plaintiff maintains that these defendants orchestrated shake downs of his cell and the confiscation of his property in retaliation for his grievances and this lawsuit. Judge Baker directed Defendants to file a supplemental summary judgment motion on the remaining retaliation claim. The case was then transferred to this Court. For the reasons below, Defendants'

supplemental summary judgment motion will be granted.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. <u>Id.</u>

## FACTS

Plaintiff is detained as a sexually violent person in Rushville Treatment and Detention Center.

On April 9, 2009, Plaintiff's room was shaken down and the following property was confiscated: 160 envelopes with stamps; seven books of matches; one bottle of petroleum; three aluminum pieces; and 17 typewriter disks. (Defendants' Undisputed Fact 12). Plaintiff filed grievances, complained to staff members, contacted his attorney representing him in his sexual detention proceeding, and contacted his family and friends, all in an attempt to recover his confiscated property.

On May 21, 2009, Plaintiff's room was shaken down again; 330 pieces of carbon paper were taken along with three "cigarette rolling

machines." (Defendants' Undisputed Fact 13).

The following property was confiscated in a shakedown of

Plaintiff's cell the next month on June 20, 2009:

> (a) 876 postage stamps hidden in typewriter cartridges; (b) 9
> paper clips; (c) 1 pair broken nail clippers; (d) 1 push pin; (e)
> 1 screw; (f) 1 broken piece of metal; (g) 1altered safety pin;
> (h) 1 excess container; (i) 28 plastic bags; (j) 1 ½ loafs moldy
> bread; (k) about 80 packets of sugar; (l) 1 large piece carbon
> paper; (m) 18 floppy discs; (n) 4 black markers; (o) 1 broken
> antenna connector; (p) tan cable cord; (q) 1 pornographic
> drawing; (r) 1 razor-blade type pencil sharpener; (s) 1
> cardboard box; (t) a map of Chicago; (u) 8 pieces of
> sandpaper; (v) 18 typewriter discs; and (w) 8 altered
> typewriter cartridges with 2 books of matches inside.

(Defendants' Undisputed Fact 14).

In July 2009, Plaintiff met with his therapist and Defendant

McCalla (a security guard) to discuss how Plaintiff wished to have his

confiscated property handled. The therapist agreed to keep some of

Plaintiff's excess envelopes and stamps for Plaintiff's later use and helped

him consolidate his photo album, because the rules allow only two photo

albums.

Plaintiff filed this case in August, 2009. Soon thereafter, Plaintiff

was informed that he would not be allowed to keep letters to his girlfriend which were saved to his typewriter disk. These letters were deemed sexually explicit and counter-therapeutic. Plaintiff chose to delete the writings rather than give up the disk. Judge Baker has already ruled in his summary judgment order that Defendants had a legitimate penological interest in prohibiting Plaintiff's possession of these writings, so that claim is not before the Court.

On November 22, 2009, Plaintiff's room was again shaken down and more property was taken, including:

> (a) an altered typewriter ribbon holder that had 15 loose stamps inside; (b) a $10 money order; (c) 12 + 137 loose stamps; (d) 186 sheets of stickers plus two sticker books; (e) 28 sheets of carbon paper; (f) 2 magnets; (g) 25 rubber bands; (h) 1 altered comb; (i) 12 marker inserts; (j) 11 paper clips; (k) 1 plastic container of a white powder substance; (l) 2 loaves of bread; (m) 7 tobacco packets; (n) 28 envelopes with usable stamps on them; (o) 16 Ziploc bags; (p) 347 loose photos; and (q) a 3" floppy disc.

(Defendants' Undisputed Fact 15). Plaintiff maintains that, after the shakedown, some legal documents were missing and other property had been damaged.

According to policy, shakedowns are supposed to occur every 30 to 60 days and whenever a resident is suspected of having contraband. Plaintiff does not dispute that he received regular shakedowns before he filed his grievances as well as after, though less frequently than every 30-60 days before those grievances. His cell was searched six times before he sent his grievances and communications about the April 2009 confiscations: January 5, 2006; November 11, 2006; March 6, 2007; September 2, 2007; December 26, 2008; and April 2009. Items were confiscated in each of these searches, including glue, several hundred postage stamps, cancelled postage stamps, a "'suspicious solution'" with stamps in it, markers, floor wax, coaxial tubing; "'nuisance contraband'" such as strings, papers clips, and wire; and, the items set forth above in the April 2009 search.

A zone sergeant assigns the shakedowns by choosing numbers randomly and keeps a log book of shakedowns performed. Defendant Phillips, the former facility director, does not assign shakedowns nor does Defendant McAdory, the security directory. Defendant McCalla is the

property control officer and met with Plaintiff to discuss his confiscated property, but McCalla did not direct the shakedowns. The last Defendant, Defendant Kulhan, does not specifically recall assigning Plaintiff's room for a shakedown, but he might have on November 22, 2009 since he was on duty that day and sometimes works as a zone sergeant. Defendant Kulhan vaguely remembers a confrontation between Plaintiff and staff regarding a cell shakedown on November 22 and remembers instructing Plaintiff that the property department would determine the propriety of the confiscation. Kulhan remembers Plaintiff asking about his grievances, but Kulhan never personally saw the grievances.

## ANALYSIS

Plaintiff moves to strike the supplemental summary judgment motion, contending that he never received a copy of Judge Baker's summary judgement order entered June 28, 2011, which directed Defendants to file a supplemental summary judgment motion. The Court sees nothing in the docket which might suggest that a copy of that

order was not mailed to Plaintiff. In any event, even if Plaintiff did not receive a copy, he could have asked for a copy and an extension after he received the supplemental summary judgment motion, which he clearly received because he responded to it. Plaintiff also asserts that he "has never been served with a copy of any motion, petition, or other pleading that could have lead [sic] to the Court's order of June 28, 2011." (d/e 92, p. 2). The record directly contradicts that assertion, as Plaintiff filed a 161 page response to Defendants' first motion for summary judgment, which was the motion addressed in Judge Baker's order.

In any event, Plaintiff offers no reason why the merits of the retaliation claim should not be reached. He has had ample time to discover and produce evidence to support the claim, as well as ample notice of Defendants' supplemental summary judgment motion. He argues that Defendants should not get a second chance at summary judgment, but there is no reason to have a trial if no rational juror could find in Plaintiff's favor. The Court may enter orders necessary to "expedit[e] disposition of the action" and "improv[e] the quality of the

trial through more thorough preparation." *See* Fed. R. Civ. P. 16(a).

The Court may also exercise its inherent powers to efficiently dispose of cases. *See* Moser v. Universal Engineering Corp., 11 F.3d 720 (7th Cir. 1993)("The inherent authority of the district court to dismiss a case sua sponte and control its docket is well established."); Osler Institute v. Ford, 333 F.3d 832, 836 (7th Cir. 2003)("When there are no issues of material fact in dispute, a district court may grant summary judgment on its own motion—as long as the losing party is given notice and an opportunity to come forward with its evidence.").  If the Court can move for summary judgment sua sponte, the Court certainly has the power to direct the parties to address issues that may be dispositive.

Moving on to the merits, Plaintiff's conclusion that the shakedowns were motivated by retaliation for his grievances, letters, and phone calls is based on speculation and conjecture.   The evidence shows that shakedowns were routinely performed of Plaintiff's cell and items were routinely confiscated, both before and after his April 2009 complaints. Though the frequency of the shakedowns did accelerate somewhat after

those complaints, the shakedowns were still within the 30-60 day time frame set by the facility's policy. Additionally, Plaintiff's repeated sequestering of excessive postage stamps, even after repeated confiscations, gave officers reason enough to conduct more frequent searches of Plaintiff's room.

Further, the only Defendant who might have directed one of the shakedowns is Defendant Kulhan, but there is no evidence that Kulhan was motivated in any part by retaliation for Plaintiff's grievances or other communications. Kulhan knew only generally of the grievances through Plaintiff's inquiries and was not even served with this lawsuit until after the last shakedown. Additionally, the uncontroverted evidence shows that Plaintiff's property was confiscated for legitimate reasons of security and safety. (Defendants' Undisputed Fact 20). Therefore, Plaintiff has not demonstrated how a rational juror could conclude that the confiscations would not have occurred regardless of retaliatory animus. Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996)("the ultimate question is whether events would have transpired differently absent the

retaliatory motive.").

In sum, a rational juror could not find for Plaintiff on this record. Therefore, summary judgment is mandated for Defendants on the retaliation claim.

IT IS THEREFORE ORDERED:

1) Defendants' supplemental motion for summary judgment is granted (d/e 90). The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED:  February 24, 2012

FOR THE COURT:

                                    s/Sue E. Myerscough
                          _____
                                SUE E. MYERSCOUGH
                          UNITED STATES DISTRICT JUDGE